IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


GEORGE RAY,                                    3:11-CV-00196-BR

          Plaintiff,
                                               OPINION, FINDINGS OF
v.                                             FACT, CONCLUSIONS OF
                                               LAW, AND VERDICT
YAMHILL COMMUNITY ACTION
PARTNERSHIP,

          Defendant.


**PHILIP M. LEBENBAUM**
Hollander Lebenbaum & Gannicott
1500 S.W. First Avenue
700 Crown Plaza
Portland, OR 97201-5860
(503) 222-2408

          Attorneys for Plaintiff

**SCOTT J. MEYER**
Mitchell Lang & Smith
2000 One Main Place
101 SW Main Street
Portland, OR 97204-3230
(503) 221-1011

          Attorneys for Defendant


1 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

**BROWN, Judge.**

This action arises under (1) the Fair Labor Standards Act (FLSA), 29 U.S.C. § 206, *et seq.*; (2) Oregon's wage-and-hour laws; (3) the Family Medical Leave Act (FMLA), 29 U.S.C. § 2601, *et seq.*; and (4) Oregon's Family Leave Act (OFLA), Or. Rev. Stat. § 659A.150.  Plaintiff's claims under FLSA and Oregon's wage-and-hour laws were tried to the Court on September 29, 2011.  At the close of evidence, the Court took under advisement Defendant's oral Motion for Judgment as a Matter of Law.

For the reasons that follow, the Court **GRANTS** Defendant's Motion for Judgment as a Matter of Law as to Plaintiff's FLSA claims, **DENIES** Defendant's Motion for Judgment as a Matter of Law as to Plaintiff's state-law minimum-wage and overtime claims, and enters a verdict in favor of Defendant and against Plaintiff as to Plaintiff's state-law minimum-wage and overtime claims.

## BACKGROUND

The following facts are undisputed unless otherwise noted.

Defendant Yamhill Community Action Partnership (YCAP) is a private, nonprofit Oregon corporation which, among other things, provides transitional housing for homeless individuals and families in Yamhill County.  Defendant employed over fifty people at all relevant times.

In September 2007 Defendant hired Plaintiff George Ray, who

2 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

was simultaneously employed full-time as a teacher for Dayton High School, as the residential manager for Defendant's shelter at 327 and 329 Adams Street, McMinnville, Oregon.  Defendant advised Plaintiff that he was required as shelter manager to live on site.  Before, during, and after his employment with Defendant, Plaintiff co-owned a home in Vernonia, Oregon, with his brother.  Before his employment with Defendant, Plaintiff resided in his Vernonia home.

Defendant paid Plaintiff $200 per month, and Plaintiff lived rent-free with paid utilities in an apartment at the shelter.

Plaintiff took leave from his shelter-manager job in October and November 2009.  On December 13, 2009, Plaintiff requested an extension of his leave to January 1, 2010.  On December 14, 2009, however, Defendant terminated Plaintiff and indicated Plaintiff did not have any accrued leave.

The minimum wage required under Oregon statute was $7.80 per hour in 2007, $7.95 per hour in 2008, and $8.40 per hour in 2009.

On February 15, 2011, Plaintiff filed an action against Defendant in this Court for violations of FLSA, Oregon's wage-and-hour laws, FMLA, and OFLA.

On April 21, 2011, Plaintiff filed a Second Amended Complaint in which he alleged claims against Defendant for (1) failure to pay Plaintiff wages for all hours worked in violation of Oregon Revised Statute § 652.120, (2) failure to pay

3 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

Plaintiff the hourly minimum wage in violation of Oregon Revised Statute § 652.025, (3) penalty wages under Oregon Revised Statute § 653.055 for failure to pay Plaintiff minimum wages, (4) penalty wages under Oregon Revised Statute § 653.055 for failure to pay Plaintiff for overtime, (5) failure to pay Plaintiff the hourly minimum wage in violation of FLSA, (6) failure to pay Plaintiff for overtime hours in violation of FLSA, (7) liquidated damages under FLSA for failure to pay Plaintiff for overtime, (8) violation of FMLA, and (9) violation of OFLA.

The parties agreed to bifurcate Plaintiff's claims, to try Plaintiff's FLSA and Oregon wage-and-hour claims to the Court, and to suspend action on Plaintiff's FMLA and OFLA claims until the Court determined Plaintiff's FLSA and Oregon wage-and-hour claims.

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

As noted, at the close of evidence Defendant made an oral Motion for Judgment as a Matter of Law as to all of Plaintiff's claims under FLSA and Oregon's wage-and-hour laws on the grounds that (1) Plaintiff did not establish Defendant was an enterprise or an enterprise engaged in commerce under FLSA because Defendant's activities were not done "in connection with the activities of a public agency" and were not "activities of a public agency" and, therefore, FLSA does not apply, and

4 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

(2) Plaintiff failed to establish he was not an exempt employee, and, therefore, he was not subject to the minimum-wage and overtime requirements of Oregon's wage-and-hour laws.

**I.    Standards for determining a motion for judgment as a matter of law.**

Federal Rule of Civil Procedure 50(a)(1) provides:

> **(a) Judgment as a Matter of Law.**
>
> > **(1)  In General.**  If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
> >
> > > **(A)**  resolve the issue against the party; and
> > >
> > > **(B)**  grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

When "'entertaining a motion for judgment as a matter of law, the court . . . may not make credibility determinations or weigh the evidence.'" *E.E.O.C. v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009)(quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). The court "must view the evidence in the light most favorable to the nonmoving party . . . and draw all reasonable inferences in that party's favor." *Id.* (quotation omitted). "The test applied is whether the evidence permits only one reasonable conclusion."

*Id.* (quotation omitted).

**II.  Plaintiff's FLSA claims.**

As noted, Defendant contends it is not an enterprise or an enterprise engaged in commerce under FLSA because Defendant's activities were not done "in connection with the activities of a public agency" and were not "activities of a public agency" and, therefore, FLSA does not apply.

> **A.  Provisions of FLSA**

Sections 206 and 207 of FLSA require employers to pay minimum wages and overtime to each employee who either (1) "is engaged in commerce or in the production of goods for commerce" or (2) "is employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. §§ 206(a)(1), 207(a)(1).  The two categories are often referred to as "individual and enterprise" coverage.  *See Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 n.8 (1985).  At issue here is "enterprise" coverage under FLSA.

FLSA defines an enterprise as, among other things, "the related activities performed . . . by any person or persons for a common business purpose . . . [excluding] the related activities performed for such an enterprise by an independent contractor." 29 U.S.C. § 203(r)(1).

The Supreme Court has held nonprofit organizations that do not "engage in ordinary commercial activities" or "serve the

6 – FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

general public in competition with ordinary commercial enterprises" operate without a "business purpose" and, therefore, are not enterprises within the meaning of FLSA. *See Tony & Susan Alamo Found.*, 471 U.S. at 297 (quoting 29 C.F.R. § 779.214). Nevertheless, FLSA provides certain types of entities that might otherwise not be held to operate with a business purpose are governed by FLSA. For example, under § 203(r)(2)(A) and (B), Congress expressly included in the definition of enterprise "activities performed . . . in connection with" hospitals; institutions providing residential care to the sick, aged, or mentally ill; certain types of schools; and certain types of railway or other transportation providers. FLSA deems these entities to operate "for a business purpose" whether they are public or private or operated for profit or not for profit. *See* 29 U.S.C. § 203(r)(2).

Congress broadened the scope of FLSA through a series of amendments to extend its coverage to virtually all federal, state, and local government employees. *See Nat'l League of Cities v. Usery*, 426 U.S. 833, 837-38 (1976), *overruled on other grounds by Garcia v. San Antonio Metro. Transit Auth.,* 469 U.S. 528 (1985). Among other things, the amendments deemed "activities performed by any person or persons . . . in connection with the activities of a public agency" to be for a business purpose and, therefore, within FLSA's definition of an

enterprise.  29 U.S.C. § 203(r)(2)(C).  In addition, § 203(s) defines an enterprise engaged in commerce or in the production of goods for commerce in pertinent part as "an enterprise that . . . is an activity of a public agency."  29 U.S.C. § 203(s)(1)(C).

Whether Defendant is governed by FLSA's enterprise coverage provision is determined by the following two-pronged analysis:  An employer must be both an "enterprise" under § 203(r)(1) and an "[e]nterprise engaged in commerce or in the production of goods for commerce" as defined in § 203(s).  *Jacobs v. New York Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009).  The employee has the burden to prove both steps to establish enterprise coverage.  *Jacobs*, 577 F.3d at 96.

**B.  Analysis**

Lee Means, Defendant's Executive Director, testified Defendant is a nonprofit organization that receives funding from various government agencies, government grants, United Way grants, and charitable-foundation grants.  Means testified Yamhill County formed a transportation district in April 2007, which subcontracted with Defendant and another nonprofit agency to provide transportation to low-income, senior, and disabled individuals in Yamhill County and, specifically, transportation in and between McMinnville, Newberg, Salem, and Hillsboro, Oregon.

Plaintiff contends Defendant is an enterprise under

8 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

§ 203(r)(2)(c) as well as an enterprise engaged in commerce under
§ 203(s)(1)(c) because Defendant performs activities "in
connection with the activities of a public agency" and it is an
activity of a public agency.  Specifically, Plaintiff points to
Defendant's transportation services through contract with Yamhill
County as satisfying both steps of enterprise coverage.
Defendant, however, contends its transportation services are
insufficient to establish enterprise coverage under FLSA.

        Defendant relies on *Jacobs* to support its assertion
that it is not covered by FLSA.  In *Jacobs* the defendant was a
private, nonprofit, independent contractor that provided social
services to children and families in the New York City area.  The
defendant's services included foster care, adoption, and physical
and mental-health initiatives.  All of the children served
through the defendant's Home and Boarding Home Programs were
referred by the New York City Administrative for Children's
Services (ACS) pursuant to contract.  ACS was responsible for
administering New York City's child-welfare services and was
authorized to contract with private, independent contractors such
as the defendant.  577 F.3d at 95.  The defendant's funding was
derived from charitable grants and federal, state, and local
funding.  Employees of the defendant filed an action to recover
unpaid overtime under FLSA on the ground that, among other
things, the defendant was an enterprise engaged in commerce.  The

9 - FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

trial court granted the defendant's motion for summary judgment.
The employees appealed.  The Second Circuit affirmed the trial
court and held the defendant did not perform activities in
connection with the activities of a public agency, and,
therefore, it was not subject to the provisions of FLSA.  *Id*. at
102.  The Second Circuit first found § 203(r)(2)(c) was
ambiguous.  *Id*. at 99.  The court noted § 203(r)(1) expressly
defines "enterprise" to exclude independent contractors.  Thus,
to the extent that § 203(r)(2)(c) includes independent
contractors, it renders meaningless the exclusion of independent
contractors under § 203(r)(1).  The Second Circuit also noted the
plaintiffs' proposed interpretation of § 203(r)(2)(c) was
unacceptable because under that interpretation the defendant, who
was an independent contractor, would be an enterprise under
§ 203(r)(2)(c) in direct contravention of § 203(r)(1).  The
Second Circuit analyzed FLSA as a whole and concluded the phrase
"in connection with the activities of a public agency" in
§ 203(r)(2)(c) means "activities performed by a public agency,
not the activities performed by a private, non-profit independent
contractor providing services to a public agency."  *Id*. at 102.
The court reasoned:

> First, as previously noted, absent special
> circumstances inapplicable to [the defendant],
> non-profit organizations do not operate for a
> business purpose and are not enterprises. . . .
> In § 203(r)(2)(A), (B), and (c), however, Congress
> singled out specific non-profits . . . that are to

be deemed enterprises nonetheless.  The Employees
concede that entities like [the defendant] -
charitable independent contractors that support
neglected children - are not included in this
list, and they offer nothing . . . to suggest that
Congress intended such organizations to be
engrafted onto the existing exceptions when they
contract with a public agency.

Second, § 203(r)(2)(A) and (B) end in
parentheticals stating that the entities
enumerated therein . . . are covered "regardless
of whether or not such [entities are] operated for
profit or not for profit."  Section 203(r)(2)(c)
lacks this parenthetical.  If the "in connection
with" phrase in § 203(r)(2)(c) were intended to
cover private, third-party entities that contract
with the government, the parenthetical would have
been critical to include in the section because
public agencies themselves - unlike schools and
hospitals - are by definition solely public and
non-profit.  Its absence adds weight to the . . .
conclusion that § 203(r)(2)(c) encompasses only
the public "activities performed by a public
agency," not the private acts of independent
contractor organizations associated with an agency
through contract and regulation, like [the
defendant].

Third, . . . limiting § 203(r)(2)(c) to
"activities performed by a public agency," . . .
avoids the absurd result that follows from the
Employees' contrary interpretation. . . .
Ultimately, the Act applies to [the defendant]
only if it qualifies both as an "enterprise" under
§ 203(s) and as an "enterprise engaged in
commerce" under § 203(s).  Section 203(s) defines
an "enterprise engaged in commerce" as an
"enterprise that . . . is an activity *of* a public
agency."  § 203(s)(1)(C)(emphasis added).  Because
"of" is a word used to indicate belonging or a
possessive relationship, . . . [the defendant's]
activities are not the activities of ACS, even
assuming it operates in connection with ACS.

Thus, § 203(r)(2)(c) and § 203(s)(1)(c) operate in
tandem, and if the former is interpreted to
encompass a third-party, private, independent

contractor somehow associated with an agency, the
Act still would not apply to that third-party
because the "in connection with" phrase is missing
from the latter.  The Employees' notion that
§ 203(r)(2)(c) includes [the defendant] while
§ 203(s)(1)(c) excludes [the defendant] is a
result we are compelled to avoid.  [The alter-
native] interpretation of § 203(r)(2)(c), in
contrast, allows the two sections to be read
seamlessly:  the "activities performed by a public
agency" comports with both the activities "in
connection with" a public agency and the
activities "of" a public agency.

*Id*. at 100-01.  The Second Circuit also examined the legislative

history and noted there is not any indication "that Congress

intended to extend enterprise coverage to employees of nonprofit

entities that provide services to a public agency."  *Id*. at 101.

Instead the legislative history "is replete with statements that

the amendments were meant to extend FLSA coverage to federal,

state, and local government employees."  *Id*.

        The Court has not found any Ninth Circuit precedent on

point.  Because the Second Circuit's analysis is thorough and

well-reasoned, the Court adopts that analysis.  Here Defendant is

a private, nonprofit, independent contractor that provided

transportation services to a public agency of Yamhill County

under a contract.  Accordingly, Defendant does not come within

the definition of an "enterprise" under § 203(r)(2)(C); Plaintiff

has not satisfied both prongs of the enterprise test with respect

to Defendant; and, therefore, Plaintiff has not established

Defendant is governed by FLSA.


12- FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

On this record the Court, therefore, grants Defendant's
Motion for Judgment as a Matter of Law with respect to
Plaintiff's FLSA claims.

**III. Plaintiff's state-law minimum-wage and overtime claims.**

Defendant also moved for judgment as a matter of law on
Plaintiff's state-law minimum-wage and overtime claims on the
ground that Plaintiff was an exempt employee and, therefore, was
not entitled to minimum wages or overtime.  Defendant relies on
Oregon Revised Statute § 653.020 to support its assertion that
Plaintiff was an exempt employee.

Oregon Revised Statute § 653.025 requires employers to pay
employees minimum wages as set out in that section.  In addition,
Oregon Revised Statute § 653.261(1) authorizes the Commissioner
of the Oregon Bureau of Labor and Industries to adopt rules that
prescribe rates for the hours that employees work beyond 40 hours
per week.  Oregon Administrative Rule 839-020-0030(1) provides in
pertinent part that "all work performed in excess of forty (40)
hours per week must be paid for at the rate of not less than one
and one-half times the regular rate of pay."

Oregon statutes, however, contain certain exceptions to the
minimum-wage and overtime requirements.  In particular, Oregon
Revised Statute § 653.020(9) provides Oregon minimum-wage and
overtime statutes do not apply to employees "domiciled at
multiunit accommodations designed to provide other people with

13- FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

temporary or permanent lodging, for the purposes of maintenance, management or assisting in the management of same."

Defendant contends Plaintiff was domiciled at the shelter, a multiunit accommodation designed to provide individuals with temporary lodging, for the purposes of managing or assisting in the management of the shelter, and, therefore, Plaintiff is exempt from Oregon's overtime and minimum-wage statutes pursuant to § 653.020(9).  Plaintiff, in turn, asserts he was not domiciled at the shelter because he maintained his residence in Vernonia and he did not intend to abandon his Vernonia residence.

Oregon Administrative Rule 839-020-0004(14) defines "domicile" for the purposes of § 653.020 as "the permanent residence of a person or the place to which that person intends to return even though that person may actually reside elsewhere." Oregon Administrative Rule 839-020-0004(27), in turn, defines "reside" as "a personal presence at some place of abode with no present intention of definite and early removal and with the intent to remain for an undetermined period, but not necessarily combined with the intent to stay permanently."

The parties advised the Court that they could not cite any cases that addressed or analyzed domicile in the context of Oregon's wage laws.  Although the parties cite cases in which courts analyze domicile in the context of Oregon's tax code, the Court notes the definition of domicile for tax purposes differs

14- FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

from the definition in Oregon Administrative Rule 839-020-0004(14). Specifically, the definition of domicile under Oregon tax law includes the requirement that "[a] person can only have one domicile at a given time. It continues as the domicile until the person demonstrates an intent to abandon it, to acquire a new domicile, and actually resides in the new domicile." Or. Admin. R. 150-316.027(1). Notably, that requirement is not included in the definition of domicile in Oregon's wage-and-hour law. Nevertheless, the tax court's analysis of how to determine one's domicile provides some guidance.

In *Wilhelm v. Department of Revenue*, the tax court noted: "To effect a change of domicile, three elements are necessary: (1) the person must establish a residence in another place; (2) form an intent to abandon the old domicile; and (3) intend to acquire a new domicile." TC-MD 110001B, 2011 WL 2713484, at *3 (Or. Tax Magistrate Div. July 13, 2011)(quotation omitted). The court advised "determination of an individual's domicile is based on intent supported by facts and circumstances rather than merely the statements of the individual." *Id*.

Here Plaintiff testified he did not intend to sell or to abandon his residence in Vernonia. In addition, Plaintiff presented evidence that he and his brother applied for a Small Business Administration Disaster Relief Loan in December 2007 to repair the Vernonia house after it sustained flood damage,

15- FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

Plaintiff listed the Vernonia property as his residence on his 2009 PERS statement, and Plaintiff listed the Vernonia property as his residence on his 2008 and 2009 federal income tax forms. In addition, Plaintiff's Vernonia address appears on (1) Plaintiff's W-2 statements for 2009, (2) the 2009 Oregon property-tax bill for the Vernonia property addressed to Plaintiff and his brother, (3) the renewal certificates for 2008 and 2009 for homeowners insurance on the Vernonia property addressed to Plaintiff and his brother, and (4) an extended warranty for equipment obtained by Plaintiff in November 2008.

On this record the Court concludes Plaintiff has established he did not intend to abandon his residence in Vernonia or intend to establish a domicile at the shelter.  Plaintiff, therefore, has established he was not an exempt employee pursuant to Oregon Revised Statute § 653.020(9).  Accordingly, the Court denies Defendant's Motion for Judgment as a Matter of Law as to Plaintiff's state-law minimum-wage and overtime claims.


**FINDINGS OF FACT**

Pursuant to Federal Rule of Civil Procedure 52(a), the Court finds the following facts by a preponderance of the evidence:

When Plaintiff was hired as Defendant's shelter manager in September 2007, he was a full-time high-school teacher in Dayton, Oregon.  Plaintiff took the job as shelter manager to decrease

16- FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

his commute to his teaching job in Dayton:  Plaintiff's commute
from his house in Vernonia to his teaching job in Dayton was
approximately 60 miles one way while Plaintiff's commute from the
shelter to his teaching job was 10-15 miles one way.

Plaintiff did not intend to abandon the Vernonia property or
to be domiciled at the shelter permanently.

At the time Plaintiff was hired, Defendant was aware
Plaintiff was a full-time teacher, drama coach, and speech coach
and, as a result, that he frequently worked later than high-
school hours, had evening practices, and attended evening events.

At Plaintiff's interviews with Kathleen Redmond, Defendant's
Client Services Director, Redmond advised Plaintiff that the
shelter-manager position did not come with specific vacation or
sick time, that it paid $200 per month, and that it did not
include health insurance.

Redmond advised Plaintiff that the primary job duties of the
shelter manager were to make a nightly curfew check of all
residents at 9:00 p.m., to create a list of chores, to check the
residents' chores daily to ensure they had been completed, and to
report violations of curfew or chores to the residents' case
managers.  Plaintiff and Defendant did not discuss the specific
number of hours per week that Plaintiff was expected to work.

In December 2007 Plaintiff's property in Vernonia flooded.
On December 5, 2007, Plaintiff advised Redman that he would "be

17- FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

away from the shelter for the next few days" to go to Vernonia
and to "help with the clean up."  Plaintiff advised Redman that
he would make the nightly curfew check by telephone while he was
away.

At some point in December 2007 Plaintiff asked Redman if
Plaintiff could spend week-ends at his Vernonia property to clean
it up and to repair it.  Plaintiff advised Redman that he would
perform the curfew checks by telephone on the nights that he was
not at the shelter.

Redman allowed Plaintiff to go to his Vernonia property on
week-ends as long as he needed to do repairs.  Redman left it up
to Plaintiff to advise her when the repairs were completed and
when he no longer needed to be away from the shelter on week-
ends.

Plaintiff never advised Redman that he had completed the
repairs, and he continued to spend most week-ends at the Vernonia
property.

The shelter-manager position required the manager to
maintain a presence at the shelter similar to that of a
homeowner; *i.e.*, the manager was responsible for the shelter at
all times, was required to respond to emergencies when at the
shelter, and generally was required to be available to residents
when he was at the shelter.  Nevertheless, the manager was not
required to be physically present at the shelter at all times.

18- FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

The shelter manager did not carry a pager.  If he was not at the shelter during an emergency, he was not required to return to the shelter if one occurred.  If the shelter manager was not available, case managers were on-call for emergencies.  The shelter manager, however, remained responsible at all times for conducting the nightly curfew check, performing the daily chore check, and reporting violations to case workers.

At some point Redman received complaints from case workers that Plaintiff was not conducting the curfew check nightly or the chore check daily.  Based on the number of complaints received and her observations, Redman estimated Plaintiff spent three hours per week performing his job functions.

A resident of the shelter from January through June 2008 received only occasional curfew checks by Plaintiff, believed no one in the shelter was doing the chores assigned, and believed Plaintiff was not conducting chore checks.  From January 2008 through June 2008, that resident organized other residents, put together a chore list, and assigned chores in an effort to get the shelter clean.  The resident also began monitoring supplies to report when they needed more.

A resident of the shelter from January 2009 to July 2009 received only one curfew check from Plaintiff, received only one chore assignment from Plaintiff, and observed Plaintiff did not supervise or check chores during the resident's time at the

19- FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

shelter.  During that time another resident made the chore list and conducted chore checks.

In 2008 case mangers for the shelter noted there was a lack of supervision by Plaintiff at the shelter.  Clients advised the case managers that Plaintiff was not conducting chore checks for days at a time and supplies were not being tracked and ordered. Eventually the case managers took over some of Plaintiff's duties such as purchasing supplies, and a resident performed the chore and curfew checks.

Based on the complaints received from residents and the case managers' observations, the case managers estimated Plaintiff spent no more than three hours per week performing the functions of his job as shelter manager.

Plaintiff did not keep timesheets and was not required to do so by Defendant.  Although timesheets generated by Defendant indicate Plaintiff worked 20 hours per week, the timesheets were not intended and, in fact, did not represent the number of hours per week that Plaintiff worked but were used to generate a paycheck from Defendant's payroll computer program.  The program would not accept anything except an hourly salary.  Accordingly, Defendant's finance department arbitrarily used 20 hours on Plaintiff's timesheet to get the computer to generate a paycheck. Similarly, regardless of the number of hours an exempt employee such as Redman worked, the timesheet generated by Defendant for

20- FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

that employee reflected 40 hours.

Anne Housley, the current shelter manager, spends 30 minutes a day doing chore check, up to 30 minutes per night doing curfew check, and approximately ten hours per week doing all of her shelter-management duties.

Housley believes as shelter manager she can go out at night as long as she conducts curfew check, and she does not believe she is required to be at the shelter at any particular time.

Means revised the shelter-manager job description to require the shelter manager to work ten hours per week.

Based on the testimony of two shelter residents, two case managers, Redman, and Means, the Court is persuaded by a preponderance of the evidence, and, therefore, finds as fact that Plaintiff performed the functions of the shelter-manager position no more than three hours per week.

## CONCLUSIONS OF LAW

Based on the foregoing Findings of Fact, the Court makes the following Conclusions of Law pursuant to Rule 52(a)(1):

Plaintiff was not an on-call employee because he was required only to leave word at the shelter where he might be reached when he was not there.  Plaintiff was not required to remain at the shelter or to stay so close to it that he could not use the time effectively for his own purposes.  *See* Or. Admin. R.

839-020-0041(3).  Accordingly, the Court must not consider the time that Plaintiff spent sleeping and doing things other than those required by the shelter-manager position when computing minimum wages or overtime.

Defendant did not violate Oregon's overtime statute.  The record is devoid of evidence that Plaintiff worked more than 40 hours at any time.  Accordingly, Plaintiff was not entitled to overtime pay.  *See* Or. Rev. Stat. § 653.261; Or. Admin. R. 839-020-0030.

Defendant did not violate Oregon's minimum-wage statute. Because Plaintiff received $200 per month as shelter manager, Plaintiff had to show that he worked more than 25.64 hours in 2007, 25.15 hours in 2008, and/or 23.8 hours in 2009 in order to establish that Defendant failed to pay him minimum wages.  As noted, the Court has found Plaintiff worked three hours per week or 12-15 hours per month.

## VERDICT

The Court has weighed, evaluated, and considered the evidence presented at trial and has completed its deliberations. Based on its Findings of Fact and Conclusions of Law made herein pursuant to Federal Rule of Civil Procedure 52(a), the Court finds in favor of Defendant and against Plaintiff as to Plaintiff's state-law minimum-wage and overtime claims.

22- FINDINGS OF FACT, CONCLUSIONS OF LAW, AND VERDICT

<u>**CONCLUSION**</u>

For these reasons, the Court **GRANTS** Defendant's oral Motion for Judgment as a Matter of Law as to Plaintiff's Fifth, Sixth, and Seventh Claims brought pursuant to FLSA.

The Court also enters its **VERDICT** in favor of Defendant and against Plaintiff as to Plaintiff's First, Second, Third, and Fourth Claims brought pursuant to Oregon's wage-and-hour laws.

Defendant is entitled to recover its prevailing-party costs against Plaintiff.  Defendant may also seek an award of attorneys' fees pursuant to Oregon Revised Statute § 653.055(4) as to Plaintiff's Second Claim for failure to pay minimum wages.

The Court **DIRECTS** the parties to file a joint status report no later than **December 12, 2011**, advising the Court of the status of the remaining claims and proposing a schedule to address those claims.

IT IS SO ORDERED.

DATED this 21st day of November, 2011.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge